## Affidavit in Support of Criminal Complaint

I, Paul T. Fregosi, a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice, being first duly sworn, depose and state under oath as follows:

1.  I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, violations of Title 21, United States Code, Sections 841, 843(b), and 846, as well as violations of Title 18, United States Code, Sections 1956 and 1957, and other federal law violations.

2.  This affidavit is made in support of a criminal complaint against Christopher BOWEN for knowingly and intentionally distributing, and possessing with intent to distribute, a controlled substance (heroin, a schedule I controlled substance; acetylfentanyl, a schedule I controlled substance; and fentanyl, a Schedule II controlled substance), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

3.  This affidavit is made in support of a criminal complaint against Dearius SMITH for knowingly and intentionally distributing, and possessing with intent to distribute, a controlled substance (heroin, a schedule I controlled substance; acetylfentanyl, a schedule I controlled substance; and fentanyl, a Schedule II

controlled substance), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

4.  In sum, as set forth more fully below, on four separate occasions between on or about May 18, 2018, and on or about June 20, 2018, BOWEN sold drugs containing one or more of the aforementioned substances to a Confidential Source ("CS").  On four other occasions, between on or about May 23, 2018, and on or about June 22, 2018, SMITH also sold drugs containing one or more of the aforementioned substances to the CS.

## Training and Experience

5.   I am employed as a Special Agent with the DEA and have been so employed since February 2017.  I am currently assigned to the DEA's Detroit Field Division, Cleveland District Office Group One.  Prior to becoming a DEA Special Agent, I was employed with the Milton Police Department (Georgia) for approximately 7 years, and for 4 of those years, I was assigned as a DEA Task Force Officer.

6.  Upon joining the DEA, I received approximately 20 weeks of training at the DEA Training Academy in Quantico, Virginia.  This training addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means in which they protect their proceeds and their controlled substances; and the manner and

means by which drug traffickers attempt to avoid law enforcement detection of their activities.  The controlled substances as to which this training applied included, but were not limited to, marijuana, cocaine, heroin, and methamphetamine.

7.    During my law enforcement career, I have participated in numerous search, seizure and arrest warrants pertaining to the seizure of all types of criminal evidence, such as illegal drugs, drug paraphernalia, drug records, drug proceeds, and evidence of other types of crimes and arrests of individuals involved in drug trafficking activities.  I have received training in the enforcement of drug laws, with an emphasis on drug trafficking and drug organizations.  I have participated in multiple drug cases, some of which have been Title III investigations, involving drug trafficking activities and have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

8.    During my law enforcement career, I have received hundreds of hours in specialized training in the enforcement of the drug laws, the investigation of drug trafficking and drug organizations, in drug recognition and terminology, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance. I have also participated in numerous drug-related

investigations, involving the following types of drugs: heroin, cocaine and cocaine base, methamphetamine and crystal methamphetamine, and marijuana. I am familiar with and have been involved in all normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant interviews, interrogation and undercover operations.  I have participated in Title III investigations, including investigations involving Mexican national drug trafficking organizations and drug traffickers.

9.    From my participation in these investigations, I have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings. Based upon my training and experience, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking and money laundering activity, I am familiar with the ways in which drug traffickers and money launderers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, and the ways that drug traffickers and money launderers use cellular telephones, digital display paging devices, and calling cards to facilitate their activity. Drug traffickers and money launderers also use numerical codes and code words to conduct their transactions.  In my experience, drug traffickers and money launderers often obtain cellular telephones in fictitious names and/or the names

of third parties in an effort to conceal their activities from law enforcement.  I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of off shore accounts.

10.  Similarly, I am aware that drug traffickers routinely use and have at their disposal multiple vehicles registered in fictitious names and/or the names of third parties.  In addition to concealing their drug trafficking activities, the use of vehicles in this manner is also an attempt to conceal assets from law enforcement in order to prevent the forfeiture of those assets.

11.  In addition, I have consulted extensively with other experienced agents regarding drug trafficking activities. As a result, the knowledge that I have obtained during my law enforcement career has been further informed by other law enforcement agents with experience conducting drug investigations.

## Sources of information

12.  I make this affidavit based upon: information that I have learned from discussions with other investigators; the review of written reports of investigations, arrests, and seizures; execution of arrest and search warrants; interviews of defendants; and the review of a search warrant affidavit by state and local officers.

13.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

### Probable Cause

14.  Beginning in May of 2018, Agents of the Suburban Police Anti-Crime Network (SPAN) Drug Enforcement Unit received information from a Confidential Source[1], herein after referred to as CS, that a text message and telephone calls were received from an unknown male[2], known only to the CS as "THEO", using telephone number (567) 560-0190[3] to conduct illegal drug transactions.  The CS advised this particular cellular telephone number is being handed off when the previous heroin dealer gets incarcerated.

15. The CS advised M.H. was a previous user of cellular telephone (567) 560-0190 and turned the telephone number over to J.T. when M.H. was arrested.  The

---

[1] Agents have been able to verify some of the information provided by the CS through independent sources, law enforcement databases, and controlled purchases. The CS is presently working for remuneration and has a prior criminal history for misdemeanor theft and receiving stolen property.  Based upon the corroborated information through previous investigations, controlled purchases, and current investigations, agents believe the CS to be credible and reliable.

[2] The user of this telephone was identified as Christopher BOWEN.

[3] This particular cellular telephone had been the focus of previous drug investigations by the SPAN Drug Enforcement Unit involving two other drug traffickers; M.H. and J.T.  Both M.H. and J.T. have since been arrested on drug trafficking charges, but the subject telephone has been passed down to other dealers.

CS stated J.T. used the cellular telephone (567) 560-0190 until he was arrested in February, 2018.

16.  The CS stated that "THEO" regularly drives a blue Honda Accord with a crooked front license plate or a black Honda Accord.  The CS stated when the (567) 560-0190 telephone number is not answered by "THEO", the CS can also contact him via telephone number (440) 622-3692.

17.  On May 18, 2018, SPAN agents conducted a controlled purchase of heroin utilizing the CS from "THEO".  The CS contacted "THEO" using the cellular telephone (567) 560-0190 via text message requesting to purchase 1 gram of heroin in exchange for $120 in US Currency.  "THEO" advised the CS to meet him at CVS on Mayfield Rd and Richmond Road.

18.  The CS was provided $120 in pre-recorded controlled purchase money and a recording device.  The CS's vehicle and person were searched for contraband and/or illegal drugs.  Agents followed the CS to the buy location set by "THEO" where the CS parked his/her vehicle on the west side of the building.  Shortly afterwards, agents observed a black Honda Accord bearing Ohio Registration HEW3470[4], arrive and park next to the CS.  Agents observed an exchange between the CS and "THEO".  At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched along with the vehicle for contraband and/or illegal drugs.  The CS turned the illegal drugs purchased over to agents.

---

[4] A records check revealed the black Honda Accord is leased to a D.H. of Catlin Drive in Richmond Heights, OH.

19.   On May 29, 2018, the controlled purchase of narcotics from "THEO" was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing.  Upon forensic testing, CCRFSL Laboratory Report# 2018-005672-0001 showed that the plastic bag containing a paper fold containing two off white fragments and small particles was identified as Heroin, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance with a net weight of .92 grams.

20.   Following the controlled purchase from "THEO", agents established surveillance as the black Honda Accord departed westbound on Mayfield Road and arrived at a residence located at 1500 Sheffield Road in the City of South Euclid.  "THEO" was observed walking into the residence by agents.

21.   Law enforcement and open records databases revealed Christopher BOWEN lives at 1500 Sheffield Road, South Euclid, OH.  Agents obtained an Ohio of motor vehicles driver's license photograph of BOWEN and showed it to the CS.  The CS positively identified BOWEN as the individual known the CS as "THEO" and the current holder of cellular telephone (567) 560-0190.

22.   On May 23, 2018, SPAN agents conducted a controlled purchase of heroin utilizing the CS.  The CS attempted to contact BOWEN both via text message and telephone call, using the (567) 560-0190 and (440) 622-3692 telephone numbers.  BOWEN would not respond.  The CS reached out to M.H. (who is currently incarcerated) to relay to him that BOWEN was "not serving" the CS.  M.H. responded to the CS that he would "take care of" the CS and had a street dealer named "SEAN" contact the CS.

23. "SEAN" contacted the CS using cellular telephone (216) 456-6934. "SEAN" agreed to sell the CS 1 gram of heroin for $120 in US Currency. "SEAN" instructed the CS to meet him at the Walgreens on Richmond Road and Monticello Boulevard. The CS was provided $120 in pre-recorded controlled purchase money and a recording device. The CS's vehicle and person were searched for contraband and/or illegal drugs. Agents followed the CS to the buy location set by "SEAN" where the CS parked his/her vehicle on the south side of the building. "SEAN" then contacted the CS and instructed the CS to go to the movie theater at Richmond Town Square. The CS drove to the parking lot near the food court and movie theater. Shortly afterwards, agents observed a grey Nissan Sentra bearing Ohio Registration HDQ1142[5] arrive and park next to the CS's vehicle. Agents observed a black male exit his vehicle and walk over to CS's vehicle. An exchange of the illegal drugs for money was made between "SEAN" and the CS. At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched along with the vehicle for contraband and/or illegal drugs. The CS turned the illegal drugs purchased over to agents.

24. On May 29, 2018, the controlled purchase of narcotics from "SEAN" was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing. Upon forensic testing, CCRFSL Laboratory Report# 2018-005672-0001 showed that the plastic bag containing small grey particles was

---

[5] A records check revealed the grey Nissan Sentra is registered to a D.E. of East 146th Street, Cleveland, OH.

identified as Heroin, a Schedule I Controlled Substance with a net weight of .99 grams.

25.  Following the controlled purchase from "SEAN", agents established surveillance of the grey Nissan Sentra as it proceeded to exit the mall parking lot and onto westbound Monticello Blvd.  At the request of the SPAN Drug Enforcement Unit, Cleveland Heights PD conducted a traffic stop of the vehicle occupied by "SEAN" to identify the two males in the vehicle.  "SEAN" was positively identified as Dearius Craig Deshon SMITH and the passenger as A.W.

26.  On May 25, 2018, SPAN agents conducted a controlled purchase of heroin utilizing the CS from SMITH. The CS contacted SMITH via cellular telephone (216) 456-6934.  SMITH agreed to sell the CS 1 gram of heroin for $120.  SMITH instructed the CS to meet him at the Richmond Town Square.  The CS was provided $120 in pre-recorded controlled purchase money and a recording device.  The CS's vehicle and person were searched for contraband and/or illegal drugs.  Agents followed the CS to the buy location set by SMITH.  Agents observed SMITH arrive at the location driving the same Nissan Sentra as before.  SMITH backed his vehicle into the open parking spot next the CS's vehicle, meeting driver's side to driver's side.  Agents observed SMITH extend his left hand out of the window and make a hand-to-hand exchange with the CS.  At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched along with the vehicle for contraband and/or illegal drugs.  The CS turned the illegal drugs purchased over to agents.

27.   On May 29, 2018, the controlled purchase of narcotics from SMITH was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing.  Upon forensic testing, CCRFSL Laboratory Report# 2018-005672-0001 showed that the paper fold containing a dark pink powder was identified as Heroin, a Schedule I Controlled Substance with a net weight of .79 grams.

28.   On June 05, 2018, SPAN agents conducted a controlled purchase of heroin utilizing the CS from BOWEN.  The CS contacted BOWEN using the cellular telephone (567) 560-0190 via text message requesting to purchase 1 gram of heroin in exchange for $120 in US Currency.  BOWEN advised the CS to meet him at CVS on Mayfield Rd and Richmond Road.  The CS was provided $120 in pre-recorded controlled purchase money and a recording device.  The CS's vehicle and person were searched for contraband and/or illegal drugs.  Agents followed the CS to the buy location set by BOWEN where the CS parked his/her vehicle on the west side of the building.  Shortly afterwards, agents observed a white Chevrolet Malibu bearing Ohio Registration HJD3322[6], arrive and park next to the CS.  Agents observed BOWEN throw a folded up piece of paper into the open window of the CS's vehicle.  The CS then threw the pre-recorded buy money into the window of BOWEN's vehicle.  At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched

[6] A records check revealed white Chevrolet Malibu is registered to PV Holding Corporation.  A subpoena was served to Avis Rental Car which revealed the vehicle was rented by J.H. of Gay Avenue, Cleveland, OH, on May 31, 2018.

along with the vehicle for contraband and/or illegal drugs  The CS turned the illegal drugs purchased over to agents.

29.  On June 13, 2018, the controlled purchase of narcotics from BOWEN was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing.  Upon forensic testing, CCRFSL Laboratory Report# 2018-005672-0002 showed that the paper fold containing a grey/white powder was identified as Heroin and Acetyfentanyl, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance, with a net weight of .65 grams.

30.  On June 05, 2018, SPAN agents conducted a controlled purchase of heroin utilizing the CS from SMITH. The CS contacted SMITH via cellular telephone (216) 456-6934.  SMITH answered the phone and agreed to meet the CS at the Walgreen's on the corner of Monticello Blvd and Richmond Road.  SMITH told the CS he was on the way.  The CS was provided $120 in pre-recorded controlled purchase money and a recording device.  The CS's vehicle and person were searched for contraband and/or illegal drugs.  Agents followed the CS to the Walgreens where the CS parked his/her vehicle on the south side of the building.  Approximately 20 minutes later, agents observed SMITH arrive at the Walgreens driving the same Nissan Sentra as before.  SMITH parked on the passenger side of the CS's vehicle.  Agents observed SMITH exit his vehicle and walk to the passenger window of the CS's vehicle where the controlled purchase was made.  At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched along with the vehicle for

contraband and/or illegal drugs.  The CS turned the illegal drugs purchased over to agents.

31.    On June 13, 2018, the controlled purchase of narcotics from SMITH was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing.  Upon forensic testing, CCRFSL Laboratory Report# 2018-005672-0002 showed that the paper fold containing three tan fragments and small particles was identified as Heroin, a Schedule I Controlled Substance, with a net weight of .99 grams.

32.    On June 12, 2018, SPAN agents conducted a controlled purchase of heroin utilizing the CS from BOWEN.  The CS contacted BOWEN using the cellular telephone (567) 560-0190 via text message requesting to purchase 1 gram of heroin in exchange for $120 in US Currency.  BOWEN and the CS agreed to meet at the CVS on Mayfield Rd and Richmond Road.  The CS was provided $120 in pre-recorded controlled purchase money and a recording device.  The CS's vehicle and person were searched for contraband and/or illegal drugs.  Agents followed the CS to the buy location where the CS parked his/her vehicle on the west side of the building.    Shortly afterwards, agents observed a blue Honda Accord bearing Ohio Registration GBW9321[7], arrive and park in the parking lot of the CVS.  Agents observed BOWEN exited his vehicle, walked past the CS's vehicle and into the store, where he stayed for several minutes before exiting and entering the passenger seat of the CS's vehicle.  BOWEN spoke on the telephone

_____

[7] A records check revealed the black Honda Accord is leased to D.H. of Catlin Drive, Richmond Heights, OH.

as the CS waited for his conversation to end.   BOWEN then exchanged the illegal drugs for the $120 in pre-recorded buy money and exited the vehicle.  At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched along with the vehicle for contraband and/or illegal drugs.  The CS turned the illegal drugs purchased over to agents.

33.  Following the controlled buy, Agents of the SPAN Drug Enforcement Unit observed BOWEN drive the blue Honda Accord westbound Mayfield Road to the home at 1500 Sheffield Road in the City of South Euclid.  BOWEN entered the residence for a short time, and then exited and reentered the blue Honda Accord.  BOWEN drove the vehicle westbound to the Coventry Business District in the City of Cleveland Heights.  BOWEN exited the vehicle and walked over to a store.  A few minutes later, BOWEN exited the store with a bag in his hands. BOWEN entered the blue Honda and drove back eastbound to northbound Richmond Road before pulling into a parking spot in front of 1420 Richmond Road Building "S" (Colony House Apartments) in the City of Lyndhurst. BOWEN entered the northern facing main entry door to the apartment building. Agents contacted the management office of the Colony House Apartments and learned that D.H., identified above as leasing the black Honda Accord, leases an apartment in the complex - more specifically 1420 Richmond Road Building "S" Apartment "4".

34.  On June 13, 2018, the controlled purchase of narcotics from BOWEN was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing.  Upon forensic testing, CCRFSL Laboratory Report# 2018-

005672-0002 showed that the plastic bag containing an off white powder was identified as Heroin, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance, with a net weight of .97 grams.

35.  On June 20, 2018, DEA agents and SPAN agents conducted a controlled purchase of heroin utilizing the CS from BOWEN.  At the direction of agents, the CS placed a series of monitored text messages to BOWEN, using telephone number 440-622-3692, seeking to purchase 5 grams of heroin.  BOWEN directed the CS to meet at a Walgreens on the corner of Mayfield Road and S. Green Road and negotiated a price of $550 for 5 grams.  The CS was provided $560 in pre-recorded controlled purchase money and a recording device.  The CS's vehicle and person were searched for contraband and/or illegal drugs.  Agents followed the CS to the buy location where the CS parked his/her vehicle on the west side of the building.  At approximately 10:58 a.m., BOWEN exited 1420 Richmond Road, Building S, Apartment 4, and enter the blue Honda Accord.  BOWEN was wearing a pink striped shirt and white shorts. BOWEN departed in the blue Honda.  Agents followed BOWEN as he arrived and parked in the driveway of 1500 Sheffield Road, South Euclid, OH.  BOWEN exited the vehicle and walked toward the residence.  At approximately 11:06 a.m., BOWEN walked down the driveway away from the residence toward his vehicle.  BOWEN enter the blue Honda.  At approximately 11:09 a.m., BOWEN departed from the residence and arrive at the Walgreens.  BOWEN parked his vehicle to the right of the CS's vehicle and then enter the front passenger seat of the CS's vehicle.   At approximately 11:13 a.m., BOWEN exited the CS's vehicle and entered the blue

Honda. At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched along with the vehicle for contraband and/or illegal drugs. The CS turned the illegal drugs purchased over to agents.

36. On June 25, 2018, the controlled purchase of narcotics from BOWEN was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing. Upon forensic testing, CCRFSL Laboratory Report# 2018-005672-0003 showed that the plastic bag containing four off white fragments and small particles was identified as Heroin, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance, with a net weight of 4.88 grams.

37. On June 22, 2018, DEA agents and SPAN agents conducted a controlled purchase of heroin utilizing the CS from SMITH. At the direction of agents, the CS placed a series of monitored text messages to SMITH, using telephone number 216-456-6934, seeking to purchase 5 grams of heroin. SMITH directed the CS to meet at the Planet Fitness on the corner of Richmond Road and Wilson Mills Road and negotiated a price of $500 for 5 grams. The CS was provided $600 in pre-recorded controlled purchase money and a recording device. The CS was instructed to ask for an additional gram of heroin during the controlled purchase. The CS's vehicle and person were searched for contraband and/or illegal drugs. Agents followed the CS to the buy location where the CS parked his/her vehicle on the west side of the mall, near Planet Fitness. Agents observed SMITH arrived at the location driving the same Nissan Sentra as in the past. A black male wearing a white T-shirt and jeans, identified as SMITH,

exited the driver's seat of the Nissan Sentra and approached the driver's side window of the CS's vehicle.  The CS stated to SMITH that he/she had an additional $100 and requested another gram of heroin, and SMITH stated that he would throw additional illegal drugs in for the CS.  SMITH handed the CS a plastic Tide Pods bag with the illegal drugs inside, wrapped in yellow notebook paper.  At the completion of the controlled buy, the CS returned to a predetermined meet location, was searched along with the vehicle for contraband and/or illegal drugs.  The CS turned the illegal drugs purchased over to agents.

38.  Each time the CS's vehicle and person were searched for contraband and/or illegal drugs before and after each controlled buy, as described above, the results of the search were negative save for the proceeds of the controlled buy.

39.  On June 25, 2018, the controlled purchase of narcotics from SMITH was submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for testing.  Upon forensic testing, CCRFSL Laboratory Report# 2018-005672-0003 showed that the paper fold containing a white powder, was identified Acetyfentanyl, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance, with a net weight of 3.47 grams.

40.  Following the controlled purchase from SMITH, agents directed the CS to contacted SMITH to address the fact that SMITH did not provide the correct amount of heroin as what was agreed upon and paid for by the CS.  SMITH ignored the calls and text messages from the CS.  The CS then reached out to

M.H., advising him of the fact that SMITH "ripped me off."  M.H. stated that he would contact SMITH and find out the reason why.  Later, the CS received a brief text message from SMITH stating, "Enjoy your trip."

41.  On June 28, 2018, agents executed a Cuyahoga County Search warrant at 1500 Sheffield Road, South Euclid, OH and a Cuyahoga County Search Warrant at 1420 Richmond Road, building "S", apartment 4, Lyndhurst, OH.

42.  Upon entry into the apartment at 1420 Richmond Road, building "S", apartment 4, member of the SPAN SWAT located BOWEN proned out on the floor in the bedroom and D.H. in the bed. Located on the floor approximately 1 foot from BOWEN's hands was a Jimenez Arms, model J.A. Nine, 9mm hand gun.  The firearm was found to have a loaded magazine and one round in the chamber.  Both BOWEN and D.H. were placed in handcuffs and transported to the Lyndhurst City jail.

43.  A search of the residence resulted in agents locating an Anderson Manufacturing, model AM-15, .223 caliber, semi-automatic rifle in the closet. Only men's clothing was found in this closet.  A Bryco Arms, model Jennings Nine, 9mm pistol was located in the bottom drawer of a dresser in the bedroom. Only men's clothing was located in this drawer.  Additionally, agents located approximately 15.7 grams of a white powdery substance, suspected to contain fentanyl or one or more of its analogues,[8] in the bottom dresser drawer along

---

[8] Agents have submitted all suspected illegal substances located during the execution of the search warrants to the Cuyahoga County Regional Forensic Science Laboratory for analysis and testing and a currently awaiting the results.

with various manufacturing equipment used to prepare heroin/fentanyl for sale. A search of the blue Honda Accord revealed a shopping bag containing approximately 40.1 grams of a brown powder, suspected to contain heroin. Agents located approximately 7.6 grams of a white powdery substance, suspected to contain fentanyl or one or more of its analogues, in the kitchen cabinet above the microwave.

44.    A search of 1500 Sheffield Road, South Euclid, OH resulted in no arrests. During a search of the residence, agents located a white latex glove containing a white powdery substance in the "finger" of the glove, a digital scale, and a bottle of Quinine, a product often used to "cut" heroin/fentanyl with.

45.    Agents conducted an interview of D.H. at the Lyndhurst Police Department following the completion of the search warrants.  D.H. was read her *Miranda Warnings,* to which D.H. advised she understood and was willing to answer questions from Agents.  D.H. advised BOWEN was her on and off boyfriend for the past 6 years.  D.H. advised that, as of approximately 3 weeks ago, she allowed BOWEN to move into her apartment.  D.H. advised she sold BOWEN the blue Honda Accord and has allowed BOWEN to borrow her black Honda Accord before.  D.H. denied knowledge of any firearms or contraband located in her apartment.  D.H. advised the closet where the .223 semi-automatic rifle was located is utilized by BOWEN.  D.H. further advised the bottom drawer of the dresser (where agents found the suspected fentanyl, manufacturing equipment, and Bryco Arms pistol) is utilized by BOWEN.

46.   Agents conducted an interview of BOWEN at the Lyndhurst Police Department following the completion of the search warrants.  BOWEN was read his *Miranda Warnings,* to which BOWEN advised he understood his rights. BOWEN advised his girlfriend, referring to D.H., did not know about anything. BOWEN informed agents that the assault rifle was his.  BOWEN would not say whether the pistols found were or were not his.  BOWEN further admitted to agents the brown powdery substance located in the blue Honda was "H", referring to heroin, the white powdery substance located in the kitchen cabinet above the microwave was Fentanyl, and the white powdery substance located in the bottom dresser drawer was nothing.

47. Officers from the Adult Parole Authority and agents from DEA and SPAN arrived at the residence on E. 146th Street, Cleveland, OH, associated with the grey Nissan Sentra, in order to serve an arrest warrant for SMITH.  Parole Officers knocked on the door for approximately 30 minutes before Officers were able to make contact with SMITH and arrest him.  SMITH was read his *Miranda Warnings,* but decline to speak with agents.  A search of the grey Nissan Sentra revealed a digital scale.

### Conclusion

48.  Based upon the evidence and the facts set forth in this affidavit, I submit that there is probable cause to believe that, between on or about May 18, 2018, and on or about June 20, 2018, in the Northern District of Ohio, Eastern Division, Christopher BOWEN knowingly and intentionally distributed, and possessed with intent to distribute, a controlled substance (heroin, a schedule I controlled

substance; acetylfentanyl, a schedule I controlled substance; and fentanyl, a Schedule II controlled substance), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

49.  I further submit that there is probable cause to believe that, between on or about May 23, 2018, and on or about June 22, 2018, in the Northern District of Ohio, Eastern Division, Dearius SMITH knowingly and intentionally distributed, and possessed with intent to distribute, a controlled substance (heroin, a schedule I controlled substance; acetylfentanyl, a schedule I controlled substance;

and fentanyl, a Schedule II controlled substance), in violation of Title 21, United

States Code, Sections 841(a)(1) and 841(b)(1)(C).


Further Your Affiant Sayeth Not

_____

Paul T. Fregosi
Special Agent
Drug Enforcement Administration


Sworn to via telephone after submission by reliable
electronic means. Fed. R. Crim. P. 3, 4(d), and 4.1.


_____          4:47 PM, Jul 3, 2018

David A. Ruiz
United States Magistrate Judge
Northern District of Ohio


Page **22** of **22**